IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **DARRICK K.,**[1] | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No. 7:21-CV-216 |
| | ) |
| **KILOLO KIJAKAZI,**[2] **Acting** | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
| **Defendant.** | ) |

# REPORT AND RECOMMENDATION

Plaintiff Darrick K. ("Darrick") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him ineligible for Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Darrick alleges that the Administrative Law Judge ("ALJ") erred by failing to properly determine his physical residual functional capacity ("RFC") and perform a function-by-function analysis; and failed to properly consider his subjective allegations. I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Darrick's Motion for Summary Judgment (Dkt. 14) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 18).

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Darrick is not disabled under the Act. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Darrick filed for DIB on July 6, 2018, claiming that his disability began on May 11, 2018. R. 23. Darrick's date last insured was June 30, 2021; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 25. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Darrick's claims at the initial and reconsideration levels of administrative review. R. 69–99. ALJ Thomas Erwin held an administrative hearing on March 27, 2020, to consider Darrick's DIB claim, which included testimony from Darrick and vocational expert Ricky Bradley. R. 43–63. Darrick was represented by counsel at the hearing.

On April 8, 2020, the ALJ entered his decision considering Darrick's claim under the familiar five-step process,[3] and denying his claim for benefits. R. 23–36. The ALJ determined that Darrick was insured at the time of the alleged disability and that he suffered from the severe impairments of degenerative disc disease of the cervical spine with fusion; degenerative joint disease of the right shoulder; migraines; and degenerative joint disease of the right knee. R. 25. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 28. The ALJ concluded that Darrick retained the RFC to perform a range of light work. R. 28. Specifically, the ALJ found that Darrick can perform light work that allows for two hours of sitting; can have no exposure to unprotected heights; can occasionally operate foot controls; can occasionally overhead reach, climb, stoop, kneel, crouch, and crawl; can have no more than moderate noise exposure; and can have no production or pace work, defined as assembly line type work or work with strict daily quotas. R. 28.

The ALJ determined that Darrick could not perform his past relevant work of tractor trailer truck driver, general duty nurse or health facility administrator. R. 34. However, the ALJ determined that Darrick could perform other jobs that exist in significant numbers in the national economy, such as furniture rental consultant, children's attendant or addressing clerk. R. 35. Thus, the ALJ concluded that Darrick was not disabled. R. 36. Darrick appealed and the Appeals Council denied his request for review on July 15, 2020. This action followed.

---

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## ANALYSIS

### 1. Medical History and ALJ Decision[4]

Darrick graduated from high school and completed two years of college with specialized training in radiology. R. 246–248. He was enlisted with the United States Navy from 1995 through 2009. R. 207.

Darrick had multiple surgeries prior to the relevant period, including bilateral meniscectomies in 2006; a right shoulder arthroscopy and slap tendon repair in 2006; a dynamic stabilization fusion at L5-S1 in 2008; a cervical fusion at C4-C6 in 2013; and a cervical fusion at C5-6 and C6-7 in 2015. R. 598.

Darrick complained of right shoulder pain in December 2017, and X-ray showed mild narrowing of the subacromnial space. R. 1032, 487–88. Darrick was diagnosed with right shoulder bicipital tendinitis, with possible underlying internal derangement, and he was referred for physical therapy. R. 1034. In 2018, an MRI of Darrick's right knee revealed a medial meniscus tear and osteoarthritis. R. 476–77. An MRI of Darrick's right shoulder showed a complex tear involving the intra-articular tendon of the biceps. R. 482–85.

In July 2018, Darrick visited the Salem VA Medical Center for right knee pain. Jason Fender, PA-C, noted Darrick's history of a partial meniscectomy and surgery to remove a bipartite patella when he was in the service. R. 473. Darrick complained of right knee pain, worse with excessive walking, and sharp pain that causes his knee to buckle. R. 473. Upon exam, Darrick had mild limb malalignment in his right knee, no swelling, and tenderness to palpation. Mr. Fender diagnosed osteoarthritis, chondromalacia and probable medial meniscus tear in Darrick's right knee and discussed treatment such as exercises, physical therapy, and

---

[4] Darrick's appeal focuses solely on his physical impairments; thus, I will not address his mental health in this opinion.

4

bracing. R. 477.  On July 25, 2018, Darrick visited James Martin, D.O., at the Salem VA Medical Center, and reported that he was scheduled for right shoulder surgery in September. R. 456.  Darrick complained of pain in his right shoulder and right knee, and chronic back pain.

Darrick began pain management in August 2018, and reported pain from his neck and low back that radiates to his head, causing migraines, and down through his left shoulder and arm. R. 404. The pain is exacerbated by prolonged activity, sitting, standing, and walking. Id. Darrick reported that a heating pad helps relieve his pain, and he had 4–6 months of pain relief after cervical radiofrequency ablation procedures. Id.  Darrick reported taking up to three doses of oxycodone prior to yard work, such as mowing and weed eating. R. 404–05. He used Lidocaine patches most nights, and benefits from diclofenac gel. R. 405.  Darrick overslept on the date of his September shoulder surgery, causing it to be rescheduled. R. 594.

On October 22, 2018, Darrick sought treatment with Mr. Fender, and complained of left knee pain that is worse with excessive walking and not helped by a brace. R. 558.  On exam, Darrick had no swelling, tenderness to palpation, and mild general limb malalignment in his left knee.  Darrick was diagnosed with a left knee medial meniscus tear. R. 559.  Mr. Fender outlined various nonoperative and operative treatment options and ordered a new brace. Id.

On November 2, 2018, state agency physician William Rutherford, M.D., reviewed Darrick's records and determined that he could perform a range of light work; stand, walk and sit for six hours in an eight-hour workday; occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, crawl; never climb ladders, ropes or scaffolds; and perform limited left and right overhead reaching. R. 76–78.  Dr. Rutherford noted that Darrick's limitations were related to his chronic low back pain, right knee osteoarthritis, status-post cervical spine fusions surgery and bilateral shoulder pain. R. 78.

On December 13, 2018, physical therapist Julie Manico, DPT, MSPT, noted that Darrick would likely benefit significantly from use of an unloader knee brace to decrease his knee pain when weightbearing. R. 659.

Darrick canceled his right shoulder surgery scheduled for December 2018, due to respiratory illness. R. 658.  He visited orthopedic surgeon Justine Crowley, D.O., in January 2019, complaining of right shoulder pain that radiates into his bicep. R. 929. On exam, Darrick had 5/5 strength, and experienced pain when lifting or raising his right arm overhead. He was rescheduled for surgery in April 2019. Id.

On February 28, 2019, state agency medical consultant Wyatt Beazley reviewed Darrick's records and determined that he could perform light work; sit, stand, and walk six hours in an eight-hour workday; occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally stoop, kneel, crouch and crawl; and had unlimited push, pull or reaching. R. 92–94.  Mr. Beazley noted that Darrick has a history of cervical spine fusion surgery and mild changes of his knees with brace use, no motor deficits, no limitations secondary to active range of motion, and no coordination deficits. R. 94.

In March 2019, Darrick reported pain in his upper and mid neck, but denied weakness or paresthesia. He was given cervical facet joint injections at C2-3 and C3-4. R. 917–18.  Darrick underwent arthroscopic surgery to repair the labral tear in his right shoulder in April 2019. R. 891.  In June 2019, Darrick reported pain in his upper and mid neck, but again denied weakness or paresthesia. R. 865.  He was tender to even light palpation over his upper and mid-cervical spine. Darrick underwent a right cervical radiofrequency ablation at C3, C4 and C5. Id.

On July 12, 2019, Darrick complained of increasing right knee pain with persistent popping and cracking and requested an orthopedic referral. R. 857.  Darrick had a routine pain

6

management exam on July 31, 2019, and reported "ok health since his last regular visit." R. 835. Darrick's pain was "well controlled with his current Nucynta dosage and he would like to continue it. With medication his pain is about 7/10 and without his pain is 10/10." Id. The physician noted that Darrick's "low back and neck pain are currently controlled to the point that patient is able to carry out the activities of daily living without severe pain. He would like to continue current treatment regimen and has even noted some improvement in mood with pain control." R. 838.

In August 2019, Darrick presented for a left cervical radiofrequency ablation at C3, C4 and C5. R. 824. He noted 60–70% relief immediately after the injections. Id.

Darrick visited orthopedic surgeon Anil Menedal on September 4, 2019, complaining of bilateral knee pain. R. 801. He noted that Tapentadol and wearing offloader knee braces help with his knee pain. His pain is worse with walking. Id. On exam, Darrick had mild general limb malalignment, range of motion of 5 to 103 degrees, positive McMurray's test, mild swelling, and tenderness to palpation over the patella and medial joint. R. 803. Darrick was diagnosed with bilateral degenerative joint disease in his knees and received a steroid injection in his right knee. R. 804.

Darrick followed up with pain management in October 2019 and reported pain in his posterior left shoulder that is slowly getting better. R. 771. He was continued on Tapentadol for pain control. R. 773. On November 13, 2019, Darrick saw Brian Dezzutti, M.D., for pain management, and reported continued pain in his posterior neck radiating into the trapezius. Dr. Dezzutti noted that radiofrequency ablations are not a useful means of managing Darrick's pain if they only provide 2–3 months of relief. R. 767. He noted that spinal cord stimulation in the cervical spine is a potential option, but that surgery would be a better approach. Id. Later that

day, Darrick reported to Charles Lamb, M.D., that he was not interested in pursuing the spinal cord stimulator but had good results previously from Biowave treatment. R. 764.  Dr. Lamb noted that Darrick had reduced flexion and extension of his neck with relatively normal rotation. His shoulder function was unremarkable, and he had symmetrical muscle mass of his upper extremity.  Darrick had normal sensation to light touch, intact grip, normal deep tendon reflexes of his biceps, triceps and knees. Dr. Lamb reinstituted Biowave treatment and ordered a new MRI of the cervical spine. R. 765.  The MRI revealed posterior disc osteophyte complexes from C3-4 through C6-7, central canal narrowing at C3-4 and C4-5 with some flattening of the cord at those levels, severe bilateral neuroforaminal stenosis at C5-6 and moderate left neural foraminal stenosis at C4-5. R. 720–21.

Darrick saw Dr. Martin on January 31, 2020, for chronic pain. R. 972. He reported pain that is tolerable with current pain medication. Dr. Martin continued his pain medication and referred Darrick to neurosurgery for evaluation and treatment of his worsening back pain. R. 974.

Darrick saw Eric Marvin, D.O., on March 5, 2020, for evaluation of his neck pain. R. 1271. Darrick reported that his radicular pian and grip strength are better, but he still has pain across his shoulders and arms.  Darrick reported that he cannot work because Neurontin makes him sleepy. Id. On exam, Darrick had normal range of motion and no midline tenderness of his cervical spine; normal range of motion of his upper extremities; full symmetric strength in his upper and lower extremities; normal muscle bulk and tone; normal gait and station; normal sensation; and symmetric reflexes.  Dr. Marvin assessed questionable pseudoarthrosis and C5 radiculopathy and recommended a transforaminal epidural steroid injection at C5. R. 1274.

The ALJ reviewed Darrick's medical history, his treatment records, and his testimony regarding his impairments and symptoms. R. 29–31. The ALJ noted that "the objective findings do not corroborate the allegations to the disabling extent as asserted" by Darrick. R. 31. The ALJ noted that the light RFC accommodates Darrick's history of degenerative joint disease, and overall physical pain associated with his back, shoulder and knee impairments. Id.

The ALJ determined that Darrick's treatment has been "essentially successful," and that he was diagnosed with migraine headaches but had "virtually no associated treatment or routine complaints of associated symptoms." R. 31–32. The ALJ noted that the record primarily consists of treatment for Darrick's neck, shoulder and knee pain; that Darrick underwent a cervical spine fusion in 2015 and continued pain management and routine visits with his primary care physicians. R. 32. The ALJ found that at those visits, Darrick reported relief from conservative measures, including injections and biowave treatments, and declined nerve stimulator treatment. The ALJ noted that in 2019, a consulting physician found that Darrick had "decent pain control," and wanted to change his medical regimen only because of the side effect of weight loss. The ALJ noted Darrick's prior surgeries for right shoulder pain, but that his symptoms were well controlled with medication. The ALJ also noted that Darrick was in routine care for his knee pain, opting for knee braces and medication, both of which resulted in marked improvement in his symptoms. R. 32.

The ALJ noted that pain and symptoms are not always accompanied by objective evidence, and that he would not disregard Darrick's statements regarding symptoms solely due to lack of objective evidence. R. 32. The ALJ further noted that objective medical evidence can be a useful indicator to help make reasonable conclusions about the intensity and persistence of

9

symptoms. The ALJ noted that in this case, objective medical evidence results reflect mild or no abnormalities, stating,

> Following surgery and pain management treatment, the claimant began to exhibit typically normal examinations, including normal gait, station, balance, range of motion, sensation, tone and strength. In addition, a 2020 x-ray of the cervical spine showed no evidence of hardware complication or changes, and x-rays of the knees and shoulder showed only mild findings. In addition, the record and the claimant's testimony also suggest that, despite his complaints of pain, he remained able to perform work side jobs, including mowing lawns and repairing vehicles. The claimant also reported performing his own daily activities, maintaining friendships and relationships, and hoping to conceive a child. Given the complaints of disabling symptoms and limitations, such activities are not limited to the extent one would expect.

R. 32.

The ALJ reviewed the opinions of state agency physicians Drs. Rutherford and Beazley and found their opinions that Darrick can perform a range of light work persuasive. R. 33. However, the ALJ modified Darrick's RFC further than suggested by Drs. Rutherford and Beazley, in consideration of his testimony and his impairments as a whole. Id. The ALJ determined that the RFC "is supported by the claimant's overall history of treatment, which suggests response to treatment and no evidence of symptoms worsening with time." R. 34.

2. **Physical RFC**

Darrick asserts that the ALJ failed to perform a function-by-function analysis of his limitations and failed to properly consider whether his impairments would limit his ability to sit, walk, stand, result in a need to lie down during the day, or result in an unacceptable number of absences from work. Pl. Br. Summ. J. p. 17. Darrick also asserts that the ALJ did not explain why his right shoulder impairment did not result in reaching limitations other than occasional overhead reaching. Id. at p. 20.

10

A function-by-function analysis requires the ALJ to develop an adequate RFC which accounts for the work activities the claimant can perform given the physical or mental impairments affecting his ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. See SSR 96-8p; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). The ALJ is instructed to cite to specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ performed the required function-by-function analysis.  The ALJ reviewed Darrick's medical records and subjective allegations in detail and provided an extensive RFC limiting Darrick to a range of light work.  Those specific limitations were included in the hypothetical the ALJ posed to the vocational expert, and the vocational expert testified that someone with those restrictions could perform jobs in the national economy. R. 60–61. The ALJ imposed more restrictions than those suggested by the two reviewing physician opinions in the record.

Darrick asserts that the ALJ "minimized his objective findings," but does not point to any medical records or objective findings that the ALJ failed to consider or improperly weighed.  Darrick also asserts that the ALJ failed to make specific findings regarding his need to take breaks or perform sustained work activities; however, Darrick does not cite any evidence in support of such limitations in the record. Darrick's arguments do not identify evidence that the ALJ failed to consider, or improperly considered, but instead, Darrick simply disagrees with the ALJ's evaluation of the evidence.  See Shinaberry v. Saul, No. 18-2096, 2020 WL 908887, at *6 (4th Cir. Feb. 26, 2020), (ALJ did not err in refusing to fully credit claimant's subjective statements regarding her physical limitations where claimant pointed to no medical evidence in support of a limitation.).  Attacking whether substantial evidence exists requires more than simply identifying medical records or statements that are inconsistent with the ALJ's findings.  A claimant must show that the ALJ used an improper legal standard, did not consider a relevant portion of the record, did not satisfy the duty of explanation, or the overwhelming weight of inconsistent evidence overcomes the substantial evidence standard.  The Fourth Circuit is clear that an ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." Hart v. Colvin, No. 5:169cv32, 2016 WL 8943299, at *3 (N.D.W. Va. Sept. 14, 2016) (quoting

Walls v. Barnhart, 296 F. 3d 287, 290 (4th Cir. 2002)). Darrick's arguments amount to a request that the court reweigh the evidence, which I am not permitted to do. The issue before me is whether the ALJ applied correct legal standards and his factual findings are supported by substantial evidence. Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012).

The ALJ was only required to create a narrative discussion that builds "an accurate and logical bridge from the evidence to his conclusion," which the ALJ did in his discussion of the medical and non-medical evidence, Darrick's alleged symptoms, and the medical opinions of record. The ALJ acknowledged and considered Darrick's complaints of pain and provided reasoning for his conclusion that, despite his pain, Darrick could perform a limited range of light work. The ALJ's RFC is, by definition, a determination of what Darrick can perform on a "regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." See 20 C.F.R. §§ 404.1545(b); SSR 96-8, 1996 WL 374184, at *1-2.

The ALJ provided a narrative discussion explaining his conclusions and the evidence that contradicts the RFC determination, cited specific medical facts and non-medical evidence supporting his conclusion, discussed Darrick's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, and described the maximum amount of each work-related activity that Darrick can perform. An ALJ's narrative discussion of all the evidence in support of his findings in determining a claimant's RFC is sufficient to comply with the function-by-function analysis under SSR 96-8P. Here, the ALJ's narrative discussion allows the court to see how the evidence in the record—both medical and nonmedical—supports the ALJ's RFC determination. Because I was not "left to guess" at how the ALJ reached his RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

### 3. **Subjective Allegations**

Darrick argues that the ALJ's assessment of his allegations is not supported by substantial evidence. Pl. Br. Summ. J. p. 22. Darrick takes issue with the ALJ's characterization of his treatment as "essentially successful," pointing to his medical records reflecting his complaints of pain. Id. at pp. 23–24. Darrick also asserts that the ALJ failed to acknowledge the limited extent to which he performed his daily activities. R. 26.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). In making that determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. (emphasis added). "At this step, objective evidence is *not* required to find the claimant disabled." Arakas v. Comm'r, 983 F.3d 83, 95 (4th Cir. 2020) (citing SSR 16-3p, 2016 WL 1119029, at *4–5). SSR 16-3p recognizes that "[s]ymptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record and may "not disregard an individual's statements

about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. Id. at *5.

Here, the ALJ considered Darrick's allegations of symptoms and pain, and found that his impairments could reasonably be expected to cause his alleged symptoms, but that his statements concerning the intensity, persistence and limiting effects of those symptoms are not fully supported. R. 29. The ALJ supported this conclusion with a narrative discussion of Darrick's medical treatment, his physical examination findings, his pain relief from injections, knee braces and pain medication, the mild findings on objective examinations and tests, and his ability to perform side jobs and his daily activities. R. 29–32. The ALJ did not ignore Darrick's complaints of pain but determined that the record as a whole reflected that with his current pain medication and treatment, Darrick could perform a limited range of light work.

Darrick asserts that the ALJ failed to qualify the extent to which he performed daily activities. Pl. Br. Summ. J. pp. 29–29. Darrick alleges that the ALJ failed to acknowledge his testimony that he used a riding lawnmower, performed automotive repairs but had to rest for 30-40 minutes afterwards, and that his son assisted him with daily activities. Id. at p. 26. Darrick cites to Arakas v. Comm'r, and Brown v. Commissioner, 873 F.3d 251 (4th Cir. 2017) for the proposition that an ALJ may not consider the type of activities a claimant can perform without also considering the extent to which he can perform them. Id.

Here, the ALJ noted Darrick's testimony that he was able to prepare simple meals, enjoyed watching television, visited friends, lived with his son, and had a girlfriend. R. 29. In his analysis of Darrick's pain and symptoms, the ALJ noted that Darrick was able to perform work side jobs, including mowing lawns and repairing vehicles, and performed his own daily activities. R. 32. This is an accurate summary of Darrick's testimony and does not transform

limited daily activities into the ability to work a full-time job. This is not a situation like Brown v. Comm'r, 873 F.3d 251 (4th Cir. 2017), where the ALJ overly relied upon minimal daily activities in evaluating the claimant's subjective complaints. Rather, the ALJ relied upon other, more significant, evidence when assessing Darrick's subjective allegations, including his treatment record; his physical examinations; his objective findings; his complaints of pain and his reports to his physicians of pain control with medication.

A reviewing court gives great weight to the ALJ's assessment of a claimant's subjective statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Further, a reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. See Bishop v. Comm'r of Soc. Sec., 583 Fed. Appx. 65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)). The ALJ's opinion was thorough and applied the proper legal standard, and I will not re-weigh the evidence. Accordingly, I conclude that the ALJ supported his analysis of Darrick's subjective complaints with substantial evidence.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the Commissioner, **DENYING** Darrick's motion for summary judgment and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note

any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: June 15, 2022

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge